FOURNET, Chief Justice.
The plaintiff, Edward A. McLellan, instituted this suit to recover $7,947.17, with interest, the balance allegedly due under a contract of employment with F. N. Johnston, Inc. He is appealing from a judgment rejecting his demands.
It appears that for many years prior to his death in February of 1942 Fabian N. Johnston had acted as the agent in New Orleans, Louisiana, of a number of manufacturers. Noticing a news account of Mr. Johnston’s death, the plaintiff contacted one of these manufacturers with the view of becoming its representative. The company put him in .touch with its vice-president, who was then in .New Orleans to assist Johnston’s widow in devising a way to hold her husband’s business together. After a number of conferences between the plaintiff, Mrs. Johnston, the company’s representative, and attorneys, it was decided the business should be incorporated as F. N. Johnston, Inc., and McLellan employed to manage its affairs for a period of five years, with optional rights to purchase the business during this period. Accordingly, papers of incorporation were drafted and signed on March 26, 1942, and McLellan entered into a contract of employment for a five year period, beginning April 1, 1942. According to Paragraph No. 3 of this agreement or contract of employment, Mc-Lellan was to receive as compensation for his services “(a) the sum of two hundred dollars per month, payable on the first and fifteenth days of each month; (b) a sum equal to twenty-five per cent of the first five thousand dollars of annual net profits, estimated at the end of each quarterly period; (c) a sum equal to fifty per cent of the excess over five thousand dollars of annual net profits, estimated at the end of each quarterly period,” and, upon resignation, discharge, or contract termination, he was, under Paragraph No. 6, to receive “as ad *341 ditional compensation for his services previously rendered, one-half of said company’s then surplus, as created by the provisions of Paragraph Five hereof,” to be made “in kind so far as practicable, within thirty days after the termination of his employment.”
Mrs. Johnston, who was the corporation’s president, was to receive compensation based also on estimates at the end of each quarterly period, the percentage due her being (a) a sum equal to 50% of the first $5,000 of annual net profits, and (b) a sum equal to 25% of the excess over $5,000 of annual net profits. Paragraph No. 4.
The surplus fund established in Paragraph No. 5, and in which McLellan and Mrs. Johnston were to share equally, was composed of “The net profits of said company, after deduction of the above compensations,” i. e., those paid McLellan under Paragraph No. 3 and those paid Mrs. Johnston under Paragraph No. 4. This was not to be used in paying dividends on capital stock, but, instead, was “placed in a surplus or undivided profits account and retained as an asset of said Company.” All amounts in excess of $2,000 in cash, which was to he used as an operating fund, were to he invested “in bonds of the United States of America, of the State of Louisiana and of the City of New Orleans, or in such other securities as said Mrs. Johnston and said McLellan may agree upon.” Paragraph No. 7.
At the termination of the contract, having elected not to avail himself of the optional rights to purchase, McLellan was paid as compensation during the fifth and final year of his employment the sum of $20,444.63 (included in which amount was the $200 a month he received under the contract), and the sum of $11,367.87, his half of the surplus fund accumulated over the five year period, including the surplus for the final year. He contended, however, that these amounts were incorrect since in computing them there was not included the commissions due on orders or business secured during the period of the employment but.paid to the corporation after the termination of the employment, and that inasmuch as these commissions, according to his accountant’s statement (introduced •> in evidence and not disputed), amounted to $12,715.47 for the six-month period May 1 through October 31, 1947, he was entitled to additional compensation at the rate of 50% of that amount (or $6,357.74) for the fifth and final year of his employment, and additional surplus participation of $1,589.17, or a total of. $7,947.17 over and above the amounts already paid him. He instituted this suit to recover such amount, with interest, when his claim was resisted, as well as for such additional amounts as might be due him on similar commissions paid the corporation after November 1, 1947. He pleaded, alternatively, and in a supplemental petition, that if his main demand were denied, then he is entitled to recover his proportionate share of the commissions *343 paid the corporation during the first year of his employment on orders secured prior thereto.
The defendant denied any additional sums were due the plaintiff, or that he was entitled to have his compensation and the surplus fund for the final year of employment computed on any other basis than the one used during the previous four years, i. e., in accordance with the plaintiff’s own construction of the contract and based on commissions actually earned by and paid to the corporation during the fiscal year of operation, irrespective of the date on which the orders were secured and given the manufacturers. This view was concurred in by the trial judge, who dismissed the suit.
,We think a study and analysis of the contract as a whole sustains the defendant’s contention and the ruling of the trial judge. It is obvious from a mere reading of it that the plaintiff’s compensation was predicated on a share-in-the-profits and not on a commission basis. The language used in establishing the surplus fund out of the so-called annual net profits clearly indicates it was to be made up of the cash paid the corporation during the year, for after deduction of the compensation paid Mrs. Johnston and McLellan, based on the annual net profits as estimated at each quarterly period, all sums in excess of the $2,000 operating expense were to be used in purchasing securities that were to be divided equally between these parties within 30 days after the termination of the employment.
If there were any doubt as to the correctness of this construction, which we do not think exists, the parties themselves, by their own actions, have so interpreted it, for, in computing the compensation due Mrs. Johnston and McLellan during the first four years of employment, it was figured on the basis of the commissions actually earned and received during the fiscal year. McLellan, who actually figured these percentages, testified that in computing the compensation due himself and Mrs. Johnston under Paragraphs Nos. 3 and 4 of the contract he “would take one look at the bank account and figure what expenses he had coming up and we would divide what was available according to this percentage arrangement here.” The books of the corporation were kept on the accrual basis; the compensation due the parties as reported in the corporation’s income tax returns was computed on the basis of the commissions actually earned and received; and the parties themselves so reported their compensation in their income tax returns.
According to the plaintiff’s own testimony his alternative plea is also without merit, for he stated unequivocally that" at the time the negotiations were being conducted for the formation of the corporation and his employment to manage, its affairs, he agreed the commissions on all orders secured during the lifetime of Fabian N. Johnston would be paid Mrs. Johnston as the legal representative of his succession.
For these reasons the judgment appealed from is affirmed.